JS-6

1

2

3

4

5

6

7

8            **UNITED STATES DISTRICT COURT**

9            **CENTRAL DISTRICT OF CALIFORNIA**

10

| | |
|---|---|
| LOS ANGELES WATERKEEPER, a public benefit non-profit corporation, | Case No. 2:23-cv-00502-ODW (MAAx) |
| Plaintiff, | CONSENT DECREE AND FINAL JUDGMENT |
| vs. | |
| MITSUBISHI CEMENT CORPORATION, a Delaware corporation, | |
| Defendant. | |

**WHEREAS**, Los Angeles Waterkeeper ("LA Waterkeeper" or "Plaintiff") is a 501(c)(3) non-profit public benefit corporation organized under the laws of the State of California, with its main office in Los Angeles, California;

**WHEREAS**, LA Waterkeeper is dedicated to the preservation, protection and defense of the surface, ground, coastal, and ocean waters of Los Angeles County from all sources of pollution and degradation;

**WHEREAS**, Mitsubishi Cement Corporation ("Mitsubishi" or "Defendant") owns and operates an industrial facility at 1150 Pier F Avenue, Long Beach, CA 90802 ("Facility") at the Port of Long Beach that receives, stores, and distributes cement[1]—including from time to time Type V cement and fly ash;

**WHEREAS**, storm water discharges associated with industrial activity at the Facility are regulated under the National Pollutant Discharge Elimination System ("NPDES") General Permit No. CAS000001 [State Water Resources Control Board], Water Quality Order No. 2014-57-DWQ as amended on November 6, 2018 ("General Permit" or "Permit"), and the Federal Water Pollution Control Act, 33 U.S.C. § 1251 *et seq.* ("Clean Water Act"), Sections 301(a) and 402, 33 U.S.C. §§ 1311(a), 1342;

**WHEREAS,** the General Permit's compliance period runs from July 1 of any given year to June 30 of the following year, *e.g.*, July 1, 2025 to June 30, 2026 (a "Reporting Year").

---

[1] As stated in the Facility's Storm Water Pollution Prevention Plan certified and executed by David Rib on February 3, 2023, references to "cement" are meant to include fly ash and other cementitious materials.

CONSENT DECREE AND FINAL JUDGMENT
2:23-cv-00502-ODW (MAAx)

2

1    **WHEREAS**, "[U]rban stormwater pollution is a leading cause of water

2    pollution in the Los Angeles area." (*Los Angeles Waterkeeper v. Pruitt* (C.D. Cal.

3    2018) 320 F.Supp.3d. 1115, 118);

4    **WHEREAS**, when it rains, storm water flows over streets, parking lots,

5    commercial and industrial sites, and other impervious surfaces, collecting pollutants

6    such as heavy metals, trash, fecal matter, and pesticides, which are then discharged

7    into area surface waters;

8    **WHEREAS**, the Facility's industrial processes generate particulate emissions

9    that settle on surfaces at the Facility where it may be mobilized by rain and discharged

10   to the harbor waters;

11   **WHEREAS**, storm water flowing over the Facility collects suspended

12   sediment, dirt, metals, and other pollutants, which may be discharged to the Port of

13   Long Beach Inner Harbor, connected coastal waters, and the Pacific Ocean

14   (collectively, the "Receiving Waters");

15   **WHEREAS**, the LA Waterkeeper alleges that industrial operations at the

16   Facility result in the discharge of pollutants, including toxic pollutants such as copper,

17   lead, and zinc, to the Receiving Waters;

18   **WHEREAS**, on November 18, 2022, LA Waterkeeper issued a notice of intent

19   to file suit under Sections 505(a)(1) and (f) of the Clean Water Act, 33 U.S.C. §

20   1365(b)(1)(A) ("60-Day Notice Letter) to Mitsubishi, its registered agent, the

21   Administrator of the United States Environmental Protection Agency ("U.S. EPA"),

22   the State Water Resources Control Board ("State Board"), the Regional Water Quality

23   Control Board, Los Angeles ("Regional Board"), the United States Attorney General,

and the Regional Administrator of the U.S. EPA (Region IX) alleging violations of the General Permit and Clean Water Act at the Facility.

**WHEREAS**, on January 23, 2023, LA Waterkeeper filed a complaint ("Complaint") against Mitsubishi in the United States District Court, Central District of the California entitled *Los Angeles Waterkeeper v. Mitsubishi Cement Corporation*, Civil Case No. 2:23-cv-00502-ODW-MAA);

**WHEREAS**, on February 17, 2023, Mitsubishi permitted LA Waterkeeper attorneys and technical consultant to conduct an inspection of the Facility, including all areas of industrial activities, drainage areas, and practices designed to mitigate the discharge of pollutants in storm water;

**WHEREAS**, on May 15, 2023, LA Waterkeeper issued a supplement to its 60-Day Notice Letter ("Supplemental Notice Letter" and, collectively with the 60-Day Notice Letter, "Notice Letters") to Mitsubishi and its registered agent providing additional details regarding violations of the General Permit and Clean Water Act at the Facility, and updating the information on which the alleged violations were largely based with data submitted by Mitsubishi to the State Board after the 60-Day Notice Letter was sent;

**WHEREAS**, in its Notice Letters and Complaint, LA Waterkeeper alleges, among other things, that Mitsubishi has repeatedly discharged industrial storm water in violation of the General Permit and Clean Water Act;

**WHEREAS**, Mitsubishi denies all allegations set forth in the Notice Letters and Complaint;

**WHEREAS**, Plaintiff and Defendant (collectively "the Parties"), without either adjudication of LA Waterkeeper's claims or any admission by Mitsubishi of any

alleged violation, believe it is in their mutual interest to enter into a Consent Decree setting forth terms and conditions appropriate to resolving the allegations set forth in the Notice Letters and Complaint without further proceedings;

**WHEREAS**, all actions taken by Mitsubishi pursuant to this Consent Decree shall be made in compliance with applicable federal, state and local rules and regulations, including without limitation, the General Permit.

**NOW THEREFORE IT IS HEREBY STIPULATED BETWEEN THE SETTLING PARTIES AND ORDERED AND DECREED BY THE COURT AS FOLLOWS**:

1.      The Court has jurisdiction over the subject matter of this action pursuant to Section 505(a)(1)(A) of the CWA, 33 U.S.C. § 1365(a)(1)(A).

2.      Venue is appropriate in the Central District Court pursuant to Section 505(c)(1) of the CWA, 33 U.S.C. § 1365(c)(1), because the Facility at which the alleged violations are taking place is located within this District.

3.      LA Waterkeeper has standing to bring this action.

4.      The Court shall retain jurisdiction over this action and the Parties for purposes of interpreting, modifying, and/or enforcing the terms of this Consent Decree.

**I.      OBJECTIVES**

5.      It is the express purpose of the Parties through this Consent Decree to further the objectives of the Clean Water Act, and to resolve all issues alleged by LA Waterkeeper in its Notice Letters and Complaint. These objectives include compliance with the provisions of this Consent Decree, compliance with all terms and

conditions of the General Permit, and compliance with all applicable sections of the Clean Water Act at the Facility.

6.     In light of these objectives and as set forth fully below, the Parties agree to comply with the provisions of this Consent Decree, and Mitsubishi agrees to comply with the applicable terms, conditions, and requirements of the General Permit and Clean Water Act at the Facility.

## II.     AGENCY REVIEW AND CONSENT DECREE TERM

### A.     Agency Review of Consent Decree

7.     <u>Agency Review</u>. LA Waterkeeper shall submit this Consent Decree to the United States Department of Justice and the United States Environmental Protection Agency (the "Federal Agencies"), within five (5) business days of the final signature of the Parties, for agency review consistent with 40 C.F.R. § 135.5. The agency review period ("Agency Review Period") expires forty-five (45) calendar days after receipt by the Federal Agencies, as evidenced by certified return receipts, copies of which shall be provided to Mitsubishi. In the event that the Federal Agencies object to entry of this Consent Decree, the Parties shall meet and confer to attempt to resolve the issue(s) raised by the Federal Agencies. If the Parties are unable to resolve any issue(s) raised by the Federal Agencies in their comments, the Parties agree to expeditiously seek a settlement conference with the assigned Magistrate Judge to resolve any issue(s).

8.     <u>Court Notice</u>. LA Waterkeeper shall notify the Court of the receipt date by the Federal Agencies, as required by 40 C.F.R. § 135.5.

9.     <u>Entry of Consent Decree</u>. Following expiration of the Agency Review Period, LA Waterkeeper shall submit the Consent Decree to the Court and request entry.

**B.     Effective Date and Term of Consent Decree**

10.     <u>Effective Date</u>. The Effective Date of this Consent Decree shall be the date on which the Agency Review Period ends, or the date on which the Parties resolve issues raised, if any, by the Federal Agencies, whether through a meet and confer or settlement conference with the assigned Magistrate Judge, whichever is later.

11.     <u>Term & Termination</u>. The "Term" of this Consent Decree means the period between the Effective Date and the "Termination Date."  The "Termination Date" of this Consent Decree shall be the latest of:

a)     three (3) years from the Effective Date;

b)     seven (7) calendar days from the conclusion of any proceeding or process to enforce the Consent Decree initiated prior to three (3) years after the Effective Date; or

c)     seven (7) calendar days from Mitsubishi's completion of all payments and other affirmative duties required by this Consent Decree.

**III.   FACILITY DESCRIPTION**

12.     The Facility's primary industrial activities include receiving, storing, and distributing cement.

13.     The Facility's storage warehouse has a rated capacity of 54,000 metric tons.

14.     According to the Facility's Storm Water Pollution Prevention Plan ("SWPPP") certified and executed by David Rib on February 3, 2023, Mitsubishi also has the capability of receiving, storing, and distributing fly ash when it is not storing other materials.

15.     The Facility's exterior surfaces are 100% impervious and have been contoured to direct the vast majority of storm water to one (1) of eight (8) drop inlets ("Inlet(s)"), each of which is equipped with Bio Clean Kraken Filter catch basin inlet filters. The Inlets convey flows to storm sewer infrastructure ("Storm Sewer") owned and operated by the Port of Long Beach.

16.     The Storm Sewer conveys storm water flows less than 300 feet to the Receiving Waters.

17.     The Facility's wharf area is contoured to direct the vast majority of storm water in that area away from Inner Harbor waters and toward the Inlets. There are gaps in the wharf edge nearest the water that may allow direct storm water discharge to the Inner Harbor.

## IV.    COMMITMENTS OF THE PARTIES

### A.    Storm Water Pollution Controls

18.     <u>Wet Season Preparation</u>. Mitsubishi shall inspect, clean, and conduct maintenance activity (as appropriate), of the entire Facility between September 1 and September 30 in each Reporting Year during the Term of this Consent Decree.

a.     The inspection and cleaning shall include, at a minimum, the following activities:

i.     inspect and maintain (per manufacturers' protocol) each of the Inlet filtration systems;

       ii.    thorough and detailed vacuuming under the truck scales; and

      iii.   inspect the Facility's pipeline infrastructure (*e.g.*, pipelines used for receipt of product, pipelines between the storage warehouse and distribution/truck loading infrastructure), the Kovako and Aalst Ship Unloaders and associated infrastructure, and surfaces (*e.g.*, fences) and clean/remove pollutants that may be mobilized by rain.

   b.  Mitsubishi shall document its inspection, cleaning, and any maintenance activity required by this paragraph 18, and shall submit such documentation to LA Waterkeeper within five (5) business days of completing all required tasks.

   19.   <u>Facility Mechanized Sweeping</u>. In each Reporting Year during the Term of this Consent Decree, Mitsubishi shall conduct a mechanized sweeping of all exterior areas of the Facility that are accessible to the mechanized sweeper:

   a.    at least one (1) time per month between May 1 and September 30;

   b.    at least one (1) time per week between October 1 and April 30 ("Wet Season"); and

   c.    at the beginning of each Operating Day[2] during which there is a 40% (or greater) probability of rain as forecasted by the National Oceanic and Atmospheric Administration at https://www.weather.gov for "90820 – Terminal Island, Long Beach, CA, USA" ("NOAA Forecast").

   20.   <u>Hand Sweeping/Vacuuming</u>. Following each mechanized sweeping, Mitsubishi shall inspect all accessible exterior areas of the Facility, and based on the

---

[2] An "Operating Day" is any day on which one (1) or more trucks are loaded with cementitious material.

results of the inspection, complete hand sweeping or vacuum with the vacuuming attachment on its mechanized sweeper or other mechanized device, of all exterior areas where visible accumulation of particulate matter or sediment remains.

21.    <u>Vacuuming Scale Area</u>. In each Reporting Year during the Term of this Consent Decree, using the vacuum attachment of the mechanized sweeper (or other appropriate mechanized device), Mitsubishi shall vacuum the area under and within fifteen (15) feet of the scales (as depicted on the Facility's Site Map):

a.    at least one (1) time per month between May 1 and September 30; and

b.    at least one (1) time per week during the Wet Season.

22.    Mitsubishi shall isolate all potentially polluting material from contact with rainfall or runoff. "Potentially polluting material" includes, but is not limited to, scrap metals, spare parts, pallets, metal drums, totes, PVC and other pipes, and other equipment, excluding the mechanized sweeper, forklift, vacuum unloaders, payloader/power squeegee, Dockside Catalytic Converter System, above ground storage tanks in adequately sized secondary containment, and lidded dumpsters. "Isolate" means placing the material under rain resistant shelter and/or covering with a waterproof tarp. Tarps must be weighted, tied down, or otherwise secured to prevent contact with rainfall and runoff.

23.    <u>Vehicle Maintenance Limitation</u>. Mitsubishi shall not perform any vehicle and equipment maintenance during wet weather, unless such maintenance is required for safe operation of the Facility, *e.g.*, the forklift breaks down in a location that prevents ingress/egress. Mitsubishi shall also: (i) conduct any maintenance activities on a disposable surface that is disposed of following completion of the

maintenance activities; and/or (ii) sweep and/or vacuum any wastes or residues associated with maintenance activities upon completion of the maintenance activities.

24. <u>Storm Water Filtration System</u>. In each Reporting Year during the Term of this Consent Decree, Mitsubishi shall maintain its current filtration technologies (Bio Clean Kraken Filter) at all eight (8) Inlets. The filtration infrastructure shall be inspected and, as appropriate, replaced and/or repaired:

  a. at least one (1) time between September 1 and September 30; and

  b. at least two (2) times during the Wet Season.

25. <u>Additional Pollutant Filtration</u>. Mitsubishi shall deploy (or retain in place if already deployed), and secure in place, FILTREXX ENVIROSOXX pollutant removal filter socks (or equivalent technology) around all eight (8) Inlets at the beginning of each Operating Day during which there is a 40% (or greater) probability of rain within the next twenty-four (24) hours as forecasted by NOAA Forecast.

26. <u>Ongoing Effectiveness Evaluation</u>. Mitsubishi has an ongoing obligation to evaluate the effectiveness of Best Management Practices implemented at the Facility. Mitsubishi shall use the results of storm water monitoring data, inspections, and observations to assist with its ongoing evaluation of the effectiveness of Best Management Practices.

27. <u>Meet and Confer Regarding Increased Industrial Activity</u>. In the event there is a significant increase in industrial activity at the Facility during the Term of this Consent Decree, Mitsubishi shall provide written notice to LA Waterkeeper as soon as practicable. The Parties shall participate in a meet and confer process to exchange information regarding operational changes at the Facility, and to determine what changes, if any, in Best Management Practices and/or water quality monitoring

requirements are appropriate given the increase in industrial activity. For purposes of this Consent Decree, a "significant increase in industrial activity" occurs when the Facility receives more than one ship per month, *e.g.*, thirteen (13) or more ships over any twelve (12) month period.

**B.    Water Quality Monitoring**

28.    <u>Storm Water Sample Collection</u>. Mitsubishi shall comply with the General Permit's monitoring requirements (*see* General Permit, § XI). Storm water samples shall be collected for analysis from the discharge ports of two (2) Inlets—the Inlet currently being sampled, as well as one (1) of the two (2) Inlets nearest the scales (as depicted on the Facility's Site Maps) as selected by LA Waterkeeper.  Mitsubishi will analyze the sampling results collected from these two Inlets for each Qualifying Storm Event ("QSE") from which samples were taken during each Reporting Year.  If the sampling results collected from these two Inlets during a Reporting Year are substantially similar, then Mitsubishi may return to collecting from one (1) Inlet as selected by LA Waterkeeper.  For purposes of this paragraph, substantially similar means that, for each pollutant during each QSE from which samples were taken and analyzed, the difference between the higher and lower sampling results is 20% or less of the higher value. If one sample is measured as not detected, then the reporting limit shall be used as the numeric value for that sample.

29.    Mitsubishi shall, at a minimum, analyze all storm water samples for the parameters identified in Table 1.

**TABLE 1**

| Parameter | Numeric Limit | Source |
|---|---|---|
| pH | 6.0 – 9.0 s.u. | U.S. EPA Benchmark |
| oil & grease | 15 mg/L | U.S. EPA Benchmark |
| total suspended solids | 100 mg/L | U.S. EPA Benchmark |
| iron | 1.0 mg/L | Numeric Action Level |
| aluminum | 1.1 mg/L | U.S. EPA Benchmark |

30.     "Report Only" for Toxic Metals. Additionally, Mitsubishi shall analyze all storm water samples for total and dissolved concentrations of copper, lead, and zinc, and report the data to LA Waterkeeper, as well as to the Regional Board as part of complying with the General Permit.

31.     Laboratory and Holding Time. Except for pH samples, Mitsubishi shall deliver all storm water samples to a California state certified environmental laboratory for analysis within allowable hold times, pursuant to 40 C.F.R. Part 136. Analysis of pH shall be completed onsite using a portable instrument calibrated in accordance with the manufacturer's instructions.

32.     Detection Limit. Defendant shall request that the laboratory use analytical methods adequate to detect the individual contaminants at or below the values specified in the General Permit and Table 1 above.

33.     Reporting. Defendant shall provide complete laboratory results of all samples collected at the Facility to the Stormwater Multiple Application and Report Tracking System ("SMARTS") database in accordance with the General Permit, and shall provide copies to LA Waterkeeper within five (5) business days of receiving the laboratory report with the results.

34.     Exceedances. For purposes of this Consent Decree, an exceedance ("Exceedance") occurs when the concentration of a given pollutant, as established by analytical data, in samples collected anywhere at the Facility exceeds the numeric standard for that pollutant in Table 1 (above) in three (3) or more samples during a Wet Season. An Exceedance shall constitute a violation of this Consent Decree.

35.     Action Plan. As of the Effective Date, and for the remainder of the Term of this Consent Decree, if storm water data collected at the Facility establishes an

1  Exceedance, Mitsubishi shall prepare and submit to LA Waterkeeper a plan for

2  reducing and/or eliminating the relevant discharge of pollutants for the Facility

3  ("Action Plan"). Each complete Action Plan shall be submitted to LA Waterkeeper

4  within thirty (30) calendar days of Mitsubishi's receipt of the laboratory report

5  establishing the Exceedance. Each complete Action Plan shall contain, at a minimum,

6  the following elements:

7      a.   a table summarizing the Exceedance(s), i.e., pollutant(s), Table 1

8           numeric standard(s), measured concentration(s), date(s), and discharge

9           point(s);

10      b.   a narrative description of the pollutant source(s) potentially contributing

11           to the Exceedance(s);

12      c.   an assessment of the effectiveness of existing Best Management Practices

13           (and/or implementation), including a description of any deficiencies;

14      d.   a narrative description of responsive Best Management Practices and/or

15           modification(s) to existing Best Management Practices designed to

16           prevent future Exceedances and/or non-storm water discharges; and

17      e.   a schedule for implementation of new and/or improved Best Management

18           Practices by the earliest practicable time, and no later than October 1

19           following submission of an Action Plan.

20      36.   <u>Action Plan Review</u>. LA Waterkeeper shall have thirty (30) days upon

21  receipt of Mitsubishi's complete Action Plan to provide Mitsubishi with proposed

22  modifications or additions (if any), and/or to seek clarifications. Mitsubishi shall, in

23  good faith, consider incorporating modifications or additions (if any) proposed by LA

Waterkeeper. Mitsubishi shall have fifteen (15) calendar days from receipt of such

proposed modifications or additions (if any) to finalize the Action Plan, respond in writing with requests for clarification (if any), and/or justify in writing why any modifications were not incorporated. Any disputes as to the adequacy of an Action Plan shall be resolved pursuant to the dispute resolution provisions of this Consent Decree, set out in Section V below. Disputes regarding the adequacy of a particular BMP shall not impact the schedule for implementing any other BMP set forth in the Action Plan. Mitsubishi shall revise the then-current SWPPP to reflect the changes required by the Action Plan, as set forth in subparagraph 39(a) below.

37.     <u>Action Plan Payment</u>. Mitsubishi shall remit by certified U.S. mail, overnight delivery, or by hand delivery a payment of four thousand dollars ($4,000.00) ("Action Plan Payment") to LA Waterkeeper contemporaneously with its submission of each Action Plan to LA Waterkeeper, ATTN: Mitsubishi Action Plan Payment at 360 E 2nd Street, Suite 250, Los Angeles, CA 90012. Failure to submit a payment as required under this paragraph will constitute a breach of the Consent Decree.

**C.      Storm Water Pollution Prevention Plan (SWPPP)**

38.     <u>Initial SWPPP Revisions</u>. Mitsubishi shall update the Facility's SWPPP to incorporate the requirements of this Consent Decree and comply with the General Permit and submit the complete, updated SWPPP to LA Waterkeeper within thirty (30) days of the Effective Date for LA Waterkeeper's review and comment. The complete, updated SWPPP shall contain, at a minimum, the following elements:

a.      a revised pollutant source assessment, including all elements required by section X.G of the General Permit as well as assessments of the potential for the

1  Facility's storm water discharges to contain pollutants for which the Receiving Waters

2  are 303(d) listed and/or have Total Maximum Daily Loads;

3      b.      a detailed narrative description of each industrial activity with the

4  potential to impact storm water quality occurring at the Facility as required by section

5  X.G of the General Permit;

6      c.      descriptions of all Best Management Practices in accordance with section

7  X.H.4 of the General Permit, including without limitation Best Management Practices

8  required by this Consent Decree;

9      d.      a set of site maps that comply with section X.E of the General Permit and

10  provisions of this Consent Decree, including one (1) with the locations of the eight (8)

11  Inlets and numeric identification (e.g., Inlet 1, Inlet 2);

12      e.      a Monitoring Implementation Plan as required by sections XI and X.I of

13  the General Permit.

14      39.   <u>Additional SWPPP Revisions.</u>

15      a.      Within thirty (30) days after approval of any Action Plan by LA

16  Waterkeeper (or resolution pursuant to Dispute Resolution), Mitsubishi shall revise

17  the then-current SWPPP to reflect the changes required by the Action Plan and submit

18  the complete, updated SWPPP to LA Waterkeeper for LA Waterkeeper's review and

19  comment.

20      b.      Within thirty (30) days after any material changes with the potential to

21  impact compliance with the Clean Water Act, General Permit, or this Consent Decree,

22  or after obtaining new information with the potential to impact compliance with the

23  Clean Water Act, General Permit, or this Consent Decree, including without limitation

regarding sources of industrial pollutants (*e.g.*, vessel unloading operations); changes

to discharge or sample points; modifying the topography of the site so as to change a drainage area; changes or additions of Best Management Practices; and material changes in or additions of industrial activities that impact storm water discharge), Mitsubishi shall revise the then-current SWPPP to reflect such changes and submit the complete, updated SWPPP to LA Waterkeeper for LA Waterkeeper's review and comment.

c.      Within thirty (30) days after a "significant increase in industrial activity" at the Facility (as defined in paragraph 27 above), Mitsubishi shall revise the then-current SWPPP to reflect such changes and submit the complete, updated SWPPP to LA Waterkeeper for review and comment.

40.     <u>SWPPP Review</u>. LA Waterkeeper shall have thirty (30) days upon receipt of each of Mitsubishi's complete, updated SWPPPs pursuant to paragraphs 38 and 39 above to provide Mitsubishi with proposed modifications or additions (if any), and/or to seek clarifications. Mitsubishi shall, in good faith, consider incorporating modifications and/or additions (if any) into the updated SWPPP. Mitsubishi shall have fifteen (15) calendar days from receipt of such proposed modifications or additions (if any), to finalize the revised SWPPP, respond in writing with requests for clarification (if any), and/or justify in writing why any modifications are not incorporated. Following its incorporation of proposed modification or additions (if any) into each revised SWPPP, Mitsubishi shall upload the SWPPP to the SMARTS database.

41.     In the event of any dispute regarding Mitsubishi's incorporation of and/or responses to LA Waterkeeper's proposed modifications or additions to a SWPPP (and/or Site Map(s)), either Party may invoke the Dispute Resolution procedures set out in Section V of this Consent Decree.

42. <u>Rain Data</u>. Data collected and reported by the Port of Long Beach shall be conclusive of precipitation quantities and timing for all purposes of this Consent Decree. In the event data is not available from the Port of Long Beach for a given date or date range, data collected at the Long Beach Airport shall be conclusive of precipitation quantities and timing for all purposes of this Consent Decree.

**D.      Compliance Monitoring and Reporting**

43. <u>Post Action Plan Inspection</u>. In the event Mitsubishi is required to prepare an Action Plan, Mitsubishi shall permit LA Waterkeeper to conduct a site inspection of the Facility. LA Waterkeeper shall complete the inspection within forty-five (45) calendar days of submitting the final Action Plan to LA Waterkeeper. Any site inspection shall occur Monday through Friday between 8:00 a.m. and 6:00 p.m. LA Waterkeeper will provide Mitsubishi with no less than seventy-two (72) hours' notice prior to any inspection. Notice will be provided by telephone and electronic mail to the individuals designated below at paragraph 70. LA Waterkeeper shall limit inspection participants to three (3) individuals, including a technical consultant. During any inspection, LA Waterkeeper's representative(s) shall be permitted to take photographs/digital images or video recordings, as well as collect water samples. LA Waterkeeper shall not disclose any information (*e.g.*, photos/images, videos, sample data) obtained during any inspection to any third party, except that such information may be disclosed to:

a.      a consultant for the limited purpose of assessing the Facility's storm water pollution control program; and/or

b.      the District Court as part of enforcing compliance with this Consent Decree.

44.     <u>Document Provision</u>. During the Term of this Consent Decree, Mitsubishi shall:

a.      copy LA Waterkeeper on all documents and written communications submitted to the Regional Board, the State Board, and/or any Federal, State, local agency, county, or municipality that are related to compliance with the General Permit and/or this Consent Decree; and

b.      provide LA Waterkeeper with all documents and written communications directly related to compliance with the General Permit and/or this Consent Decree that are received by Mitsubishi from any Federal, State, local agency, county, or municipality within seven (7) calendar days of receipt by Mitsubishi.

c.      provide LA Waterkeeper with complete and accurate copies of any and all logs and records required by the General Permit or this Consent Decree (*e.g.*, photos or digital images required to be part of any logs, training records), within five (5) calendar days of a written request.

45.     <u>Monitoring Compliance Costs</u>. Mitsubishi shall partially defray costs associated with LA Waterkeeper's monitoring compliance with this Consent Decree by making a payment of ten thousand dollars ($10,000.00). Payment shall be made within thirty (30) calendar days of the Effective Date, and within thirty (30) calendar days after any additional site inspection, as applicable. All payments shall be made via check payable to: "Los Angeles Waterkeeper" and sent via certified mail, return receipt requested to Los Angeles Waterkeeper, c/o Barak Kamelgard, 360 E 2nd Street Suite 250, Los Angeles, CA 90012. Failure to submit payment as required under this paragraph will constitute breach of the Consent Decree.

1

2 **E.      Environmental Mitigation, Fees, Costs, and Other Payments**

3      46.    Environmental Mitigation Project. Mitsubishi shall make one

4 environmental mitigation payment to the Rose Foundation for Communities and the

5 Environment ("Rose Foundation"), an environmental non-profit organization. The

6 payment of twenty thousand dollars ($20,000.00) shall be mailed via certified mail or

7 overnight delivery within ten (10) calendar days of the Effective Date, payable to the

8 Rose Foundation, and sent to, ATTN: LA Waterkeeper v. Mitsubishi Receiver, 201

9 4th Street, Suite 102 Oakland, CA 94607-4369. Notice that the payment has been

10 made shall be provided to LA Waterkeeper by email at barak@lawaterkeeper.org.

11 Failure to submit payment as required under this paragraph will constitute breach of

12 the Consent Decree.

13      47.    Use of Environmental Mitigation Payment Funds. Environmental

14 mitigation payment funds will be used to support environmental projects related to

15 water quality in the Southern California Bight, preferably adjacent to the Port of Long

16 Beach, and designed to analyze, reduce, prevent, and/or otherwise mitigate the

17 ecological or public health effects of industrial storm water and/or non-storm water

18 discharges.

19      48.    Fees and Costs. Mitsubishi shall reimburse LA Waterkeeper in the

20 amount of seventy-five thousand dollars ($75,000.00) to help defray costs and fees

21 associated with LA Waterkeeper's investigation, preparation, and service of the

22 Notice Letters and Complaint, expert/consultant fees and costs, negotiation of a

23 resolution, and drafting/filing all necessary documents with the Court in the public

interest via this Consent Decree. Payment shall be delivered by certified mail or

overnight delivery within ten (10) calendar days of the Effective Date to: Sycamore Law, Inc., Attorney Client Trust Account, 414 Olive Street, Santa Barbara, California 93101. Failure to submit payment as required under this paragraph will constitute breach of the Consent Decree.

49.     Defendant shall pay interest on any payments, fees, or costs owed pursuant to this Consent Decree that are not received by the due date. The interest shall accrue starting the next business day after the payment is due and shall be computed at a rate equal to the lower of: (i) 10% per year (0.833% per month); or (ii) the maximum rate permitted by applicable law. Interest shall continue to accrue daily on any outstanding balance until Defendant is current on all payments then due under this Consent Decree. Interest on late payments shall be made by check payable to: Rose Foundation, and such funds shall be used for the sole purpose of funding environmentally beneficial projects, as described in paragraph 47 above. Payment shall be delivered by overnight carrier to Rose Foundation, ATTN: LA Waterkeeper v. Mitsubishi Receiver, 201 4th Street, Suite 102 Oakland, CA 94607-4369.

## V.     DISPUTE RESOLUTION

50.     <u>Continuing Jurisdiction</u>. This Court shall retain jurisdiction over this matter for the Term of this Consent Decree for the purposes of enforcing its terms and conditions, and adjudicating any and all disputes among the Parties that may arise relating to any provision of this Consent Decree. The Court shall have the power to enforce this Consent Decree with all available legal and equitable remedies, including contempt.

51.     <u>Meet and Confer</u>. Either Party to this Consent Decree may invoke the dispute resolution procedures of this Section V for any and all disputes related to the

interpretation of and/or compliance with this Consent Decree by notifying the other party in writing of the matter(s) in dispute and of the disputing party's proposal for resolution. The Parties shall then meet and confer in good faith (either telephonically or in person) within fourteen (14) calendar days of the date of the notice in an attempt to fully resolve the dispute.

52. <u>Settlement Conference</u>.  If the Parties cannot resolve the dispute within thirty (30) days of the meet and confer described in paragraph 51, the Parties shall request a settlement meeting or conference before the Magistrate Judge assigned to this action.

53. <u>Motion</u>. In the event the Parties cannot fully resolve the dispute within thirty (30) calendar days of the settlement conference described in paragraph 52, the Parties agree that the dispute may be submitted for formal resolution by filing a motion before the United States District Court for the Central District of California. The Parties agree to request an expedited hearing schedule on the motion.

54. <u>Prevailing Party Fees</u>. In resolving any dispute arising from this Consent Decree before the Court, the prevailing Party shall be entitled to fees and costs incurred pursuant to the provisions set forth in section 505(d) of the Clean Water Act, 33 U.S.C.§ 1365(d), applicable case law interpreting such provisions, or as otherwise provided for by statute and/or case law.

## VI.    RELEASE OF LIABILITY AND CONVENANT NOT TO SUE

55. <u>Waiver and Releases</u>. In consideration of the above, upon the Effective Date, LA Waterkeeper, on its own behalf and on behalf of its officers and directors, releases Mitsubishi, its officers, directors, managers, employees, members, parents, subsidiaries, divisions, affiliates, insurers, landlords, lenders, successors or assigns,

agents, attorneys and other representatives, from and waives all claims and demands that were or could have been raised based on the Notice Letters and/or Complaint related to the Facility up to and including the Termination Date of this Consent Decree.

56.     Nothing in this Consent Decree limits or otherwise affects either Party's right to address or take any position that either deems necessary or appropriate in any informal or formal proceeding before the State Board, Regional Board, California Environmental Protection Agency, U.S. EPA, or any other judicial or administrative body on any matter relating to Mitsubishi's compliance at the Facility with the General Permit or the Clean Water Act.

## VII.   MISCELLANEOUS PROVISIONS

57.     <u>No Admission of Liability</u>. The Parties enter this Consent Decree for the purpose of avoiding prolonged and costly litigation on disputed claims. Neither the Consent Decree nor any payment pursuant to the Consent Decree shall constitute or be construed as a finding, adjudication, or acknowledgement of any fact, law, or liability, nor shall it be construed as an admission of violation of any law, rule, or regulation. Mitsubishi maintains and reserves all defenses it may have to any alleged violations that may be raised in the future.

58.     <u>Counterparts</u>. This Consent Decree may be executed in any number of counterparts, all of which together shall constitute one original document. Telecopy, electronic mail, and/or facsimile copies of an original signature shall be deemed to be originally executed counterparts of this Consent Decree.

59.     <u>Authority</u>. The undersigned representatives for LA Waterkeeper and Mitsubishi each certify that they are fully authorized by the Party whom they

represent to enter into this Consent Decree. A Party's signature to this Consent Decree transmitted by facsimile or electronic mail shall be deemed binding.

60.     Construction. The language in all parts of this Consent Decree shall be construed according to its plain and ordinary meaning, except as to those terms defined in the General Permit, the Clean Water Act, or specifically herein. The captions and paragraph headings used in this Consent Decree are for reference only and shall not affect the construction of this Consent Decree.

61.     Full Settlement. This Consent Decree constitutes a full and final settlement of this matter.

62.     Integration Clause. This is an integrated Consent Decree. This Consent Decree is intended to be a full and complete statement of the terms of the agreement between the Parties and expressly supersedes any and all prior oral or written agreements, covenants, representations, and warranties (express or implied) concerning the subject matter of this Consent Decree.

63.     Severability. In the event that any provision, paragraph, section, or sentence of this Consent Decree is held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

64.     Choice of Law. This Consent Decree shall be governed by the laws of the United States, and where applicable, the laws of the State of California.

65.     Negotiated Settlement. The Parties have negotiated this Consent Decree, and agree that it shall not be construed against the Party preparing it, but shall be construed as if the Parties jointly prepared this Consent Decree. Any uncertainty and ambiguity shall not be interpreted against any one Party.

66.   <u>Modification of the Consent Decree</u>. This Consent Decree, and any provisions herein, may not be changed, waived, discharged, or terminated unless by a written instrument, signed by the Parties. In the event that there is a dispute regarding a change, waiver, discharge, or termination of any provision(s), either Party may seek resolution from a court.

67.   <u>Assignment</u>. Subject only to the express restrictions contained in this Consent Decree, all of the rights, duties and obligations contained in this Consent Decree shall inure to the benefit of and be binding upon the Parties, and their successors and assigns. Mitsubishi shall notify LA Waterkeeper within ten (10) calendar days of any assignment.

68.   <u>Force Majeure</u>. Either Parties' performance of any requirement of this Consent Decree shall be extended or modified in the case of a force majeure event as follows:

    (a)   A "force majeure event" is any event arising from causes beyond either Party's control that prevents or delays the performance of any requirement of this Consent Decree despite its best efforts to fulfill the requirement;

    (b)   The requirement to exercise "best efforts to fulfill the requirement" includes using good faith efforts to anticipate any potential force majeure event and good faith efforts to address the effects of any such event (i) as it is occurring and (ii) after it has occurred, to prevent or minimize any delay to the greatest extent possible;

    (c)   A force majeure event includes government orders or restrictions related to COVID-19 and comparable public health threats. Any Party

seeking to rely upon this paragraph to excuse or postpone performance shall have the burden of establishing that it could not reasonably have been expected to avoid the force majeure event, and which by exercise of due diligence has been unable to overcome the failure to perform;

(d)   A force majeure event does not include normal inclement weather, a financial inability to perform, or employee negligence;

(e)   If Mitsubishi seeks to avoid performance of any requirement of this Consent Decree on account of a force majeure event, it shall provide written notice to LA Waterkeeper no later than ten (10) calendar days after the time that Mitsubishi first knew of, or by the exercise of due diligence, should have known of, a force majeure event. The notice shall state the anticipated duration of any delay, its cause(s), and propose an alternative schedule for performing the affected requirement(s);

(f)   If LA Waterkeeper agrees that a force majeure event has occurred, LA Waterkeeper shall agree to extend the time for Mitsubishi to perform the affected requirement(s) for the time necessary to complete those obligations; and

(g)   If LA Waterkeeper does not agree that a force majeure event has occurred or does not agree to the extension of time sought by Mitsubishi, it may invoke the Dispute Resolution Procedures of this

Consent Decree.

69.     If for any reason the U.S. Department of Justice ("DOJ") or the District Court object to entry of this Consent Decree in the form presented, the Parties shall use their best efforts to work together to modify the Consent Decree within thirty (30) calendar days so that it is acceptable to the DOJ or the District Court. If the Parties are unable to modify this Consent Decree in a mutually acceptable manner that is acceptable to the DOJ or the District Court, this Consent Decree shall immediately be null and void as well as inadmissible as a settlement communication under Federal Rule of Evidence 408 and California Evidence Code section 1152.

70.     <u>Correspondence</u>. All notices required herein or any other correspondence pertaining to this Consent Decree shall be, the extent feasible, sent via electronic mail transmission to the e-mail address listed below, or if electronic mail is not feasible, then by certified U.S. mail with return receipt, overnight delivery, or by hand delivery to the following addresses:

<u>If to Plaintiff</u>:
Jesse C. Swanhuyser
SYCAMORE LAW, INC.
414 Olive Street
Santa Barbara, CA 93101
jesse@sycamore.law
(805) 689-1469

<u>If to Defendant</u>:
Maya Lopez Grasse
ALSTON & BIRD LLP
333 South Hope Street, 16th Floor
Los Angeles, CA 90071
maya.grasse@alston.com
(213) 576-2526

With copies to:
Barak Kamelgard
Senior Attorney
Benjamin Harris
Staff Attorney
Los Angeles Waterkeeper
360 E 2nd Street, Suite 250
Los Angeles, CA 90012
barak@lawaterkeeper.org
ben@lawaterkeeper.org
(310) 394-6162

With copies to:
Eric Jen
Terminal Manager
Berth F208, Long Beach, CA 90802
ejen@mitsubishicement.com

Notifications of communications shall be deemed received three (3) calendar days after the date that they are postmarked and sent by first-class mail, or upon proof of delivery for overnight delivery, upon receipt when personally delivered, or upon delivery after acknowledgement of receipt by the receiving party. Any change of address or addresses shall be communicated in the manner described above for giving notices.

The Settling Parties hereto enter into this Consent Decree and submit it to the Court for its approval and entry of final judgment.

IN WITNESS WHEREOF, the undersigned have executed this [proposed] Consent Decree as of the date set forth below.

**APPROVED AS TO CONTENT**

LOS ANGELES WATERKEEPER

by:
    Bruce Reznik
    Executive Director
Date:   July 26, , 2023

MITSUBISHI CEMENT CORP.

by:   *Austin Marshall*
    Austin Marshall
    President and C.O.O.

Date:   ___ July, 31 ___, 2023

**APPROVED AS TO FORM**

SYCAMORE LAW, INC.                          ALSTON & BIRD LLP

by: _____          by: _____
        Jesse Swanhuyser                          Maya Lopez Grasse
        Attorneys for Plaintiff                   Attorneys for Defendant

Date:   July 25, 2023                      Date:   ___July 27___, 2023

**IT IS SO ORDERED:**

Date:  August 31, 2023

_____
OTIS D. WRIGHT II
DISTRICT COURT JUDGE
CENTRAL DISTRICT OF CALIFORNIA